UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RICKY GENE WHITE                                                              PLAINTIFF

v.                                    No. 5:19-CV-05144

SHAWN HOLLOWAY, et al.                                                        DEFENDANTS

## OPINION AND ORDER

Before the Court are Defendants' motion for summary judgment (Doc. 34), brief in support (Doc. 35), and statement of facts (Doc. 36); Plaintiff's response (Doc. 40), brief in support (Doc. 41), and response to statement of facts (Doc. 42). The motion for summary judgment will be granted.

**I.      Background**

Plaintiff brought this 42 U.S.C. § 1983 lawsuit after he was arrested by the Benton County Sheriff's Department on August 3, 2016. On the date of the arrest, Plaintiff led police officers on a high-speed, multistate car chase through Missouri and Arkansas. During the chase, car speeds reached over one hundred miles-per-hour. Plaintiff did not voluntarily stop his car, so law enforcement deployed a spike trap that caused Plaintiff's car to spin out and stop. When the vehicle was stopped, Plaintiff was directed to keep his hands in sight, and complied with that order. He was then forcibly removed from the vehicle and restrained on the ground by several police officers, including Defendants Sheppard and Xiong. At some point during the altercation, Plaintiff's right elbow was broken, and he sustained injuries to his back, head, and face. Plaintiff was taken to the Benton County Jail, examined by a nurse, and then sent to a hospital where he was informed that his elbow was broken. While incarcerated at the Benton County Jail, Plaintiff's appointment with his orthopedic doctor was delayed by several weeks due to transportation issues from the jail.

Plaintiff brought actions under 42 U.S.C. § 1983 against Defendants Sheppard, Xiong, Holloway, and Benton County. Plaintiff alleges that Defendants Sheppard and Xiong used excessive force during the arrest, violating his Fourth Amendment right to be free from unreasonable seizures. Additionally, Plaintiff alleges that Defendant Holloway, as the Benton County Sheriff, and Defendant Benton County, as the municipality that oversees the Benton County Sheriff's Department and Benton County Jail, carried out a policy that denied medically necessary treatment to inmates in violation of the Eighth Amendment. Defendants moved for summary judgment on the § 1983 claims.

## II.     Summary Judgment Standard

On a motion for summary judgment, the burden is on the moving party to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In order for there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Where possible, on a motion for summary judgment, the Court relies "on evidence from a videotape of the incident . . . ." *Meehan v. Thompson*, 763 F.3d 936, 938 (8th Cir. 2014) (citing *Scott v. Harris,* 550 U.S. 372, 380–81 (2007)). As such, where one party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," there is no genuine dispute as to that fact. *Scott*, 550 U.S. at 380 (admonishing the Eleventh Circuit Court of Appeals for adopting a version of facts clearly contradicted by a videotape of the event).

### III. Analysis

#### A.     § 1983 Excessive Force Claim

Plaintiff's § 1983 excessive force claims against Defendants Sheppard and Xiong must be dismissed because no reasonable jury would find Defendants' actions were objectively unreasonable under the circumstances. When examining § 1983 excessive force claims, "[t]he dispositive question is whether the amount of force the officer used was objectively reasonable." *Shannon v. Koehler*, 616 F.3d 855, 862 (8th Cir. 2010). Reasonableness turns on several different factors, including, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Importantly, whether a particular use of force was reasonable should be "viewed from the vantage point of the police officer at the time of arrest or seizure." *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008).

In opposing summary judgment, Plaintiff primarily relies on *Perry v. Woodruff County Sheriff Department ex rel. Barker* in his response, but the facts in *Perry* are not similar to Plaintiff's case. 858 F.3d 1141, 1145 (8th Cir. 2017). In *Perry*, police officers used a forcible takedown on a non-resisting plaintiff who had not broken any laws at the time of arrest. *Id.* at 1146. Here, by contrast, Defendants Sheppard and Xiong had probable cause to believe Plaintiff was breaking at least some laws because he was driving in excess of the speed limit and refusing to pull over. The Court must look instead to cases involving plaintiffs who had broken laws and who had resisted arrest.

The Eighth Circuit has repeatedly held that police officers may use appropriate force to detain and arrest fleeing suspects. In high-speed car chases and in the first moments after a car chase has ended, courts "make 'allowance for the fact that police officers are often forced to make

split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Wenzel v. City of Bourbon*, 899 F.3d 598, 602 (8th Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). *See also Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (holding that it was reasonable for police officers to forcibly remove suspect from car after a short car chase where the plaintiff failed to comply with orders to exit the vehicle). Similarly, in *McGruder v. Heagwood* the Eighth Circuit granted summary judgment where the plaintiff's wrist had been broken by officers attempting to remove him from the car. 197 F.3d 918, 920 (8th Cir. 1999). The plaintiff in *McGruder* attempted to drive away from a police officer during an arrest, and his car was blocked in by other police officers less than 100 feet from the initial stop. *Id.* at 919. The police officers then pulled the plaintiff from the car, breaking his wrist in the process. *Id.* The Eighth Circuit granted summary judgment, holding that it was objectively reasonable for the police to believe that the suspect was resisting arrest and had to be pulled from the car, "though this belief may have been erroneous." *Id.* at 920.

In the present case, Plaintiff led police officers on a high-speed chase through two different states. He did not voluntarily end his evasion of law enforcement, but only stopped when his vehicle was disabled. Though he thereafter complied with direction to keep his hands visible, it would not have been clear to a reasonable law enforcement officer under these circumstances that Plaintiff's evasion had ended. The car chase in this case was longer and posed greater risk to participants and the public than the chase in *McGruder*, and it would not yet have been clear to a reasonable law enforcement officer that Plaintiff's attempts to flee had ended and that he did not intend to continue the chase on foot once he was free of the vehicle. No reasonable juror could find Defendants acted unreasonably in using physical force to detain and restrain Plaintiff, even if

he intended to fully comply with their commands after his vehicle was stopped. Further, after viewing the dash cam video of the arrest and considering the extent of Plaintiff's injuries and the circumstances immediately preceding that arrest, no reasonable juror would find the amount of force used against Plaintiff was disproportionate to the perceived need. *See Montoya v. City of Flandreau*, 669 F.3d 867, 870–71 (8th Cir. 2012) (explaining that whether a use of force is reasonable may be determined based on the severity of the suspect's crime, the perceived danger a suspect poses, whether the suspect is actively resisting or attempting to flee, and injuries caused to the suspect during arrest); *accord* Eighth Circuit Manual of Model Jury Instruction (Civil) 4.40 (directing jury to consider "the need for the application of force; the relationship between the need and the amount of force that was used; the extent of the injury inflicted; and whether a reasonable officer on the scene, without the benefit of hindsight, would have used that much force under similar circumstances").

### B.   § 1983 Denial of Medical Care

Plaintiff's § 1983 claim for denial of medical care must also fail. Suits against county officials in their official capacity are treated as claims against the county itself. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010). Therefore, the official capacity suit against Defendant Holloway for the denial of medical care is redundant, as Benton County is a named defendant. It is well established in the Eighth Circuit that "[o]fficial-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Grayson v. Ross*, 454 F.3d 802, 810–11 (8th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Plaintiff has demonstrated that at least one of his orthopedic appointments following his

injury was delayed by several weeks due to transportation issues from the Benton County Jail. However, Plaintiff has not provided evidence of an official custom or policy of delaying treatment or failing to secure transportation or anything similar, or that the delay was the moving force of his injury.[1] Defendants have provided written policies detailing the Benton County Jail's medical procedures, as well as its health services agreement that provides medical care for inmates. (Doc. 36-2, pp. 28-50). Plaintiffs in official capacity § 1983 claims are not required to point to an unconstitutional written policy, but if there is not one they must demonstrate

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Plaintiff has not presented any evidence, or even pled any facts, that show there was a pervasive custom of denying or delaying medical care to inmates at the Benton County Jail.

    **C.    Failure to Train**

In order to succeed on a § 1983 failure to train[2] claim, a plaintiff must demonstrate that the defendant "1) Received notice of a pattern of unconstitutional acts committed by subordinates; 2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) Failed to take sufficient remedial action; and 4) That such failure proximately caused injury to [the

---

[1] Plaintiff's medical records indicate that his elbow injury healed fairly well. In the chart notes from October 26, 2016, Plaintiff's medical provider, Dr. Scott Cooper, states "I told Mr. White that this is a pretty big injury, and in fact, he is doing really well with it." (Doc. 42-3, p. 2).

[2] Plaintiff's complaint frames the failure to train claim as a negligence issue, making it a state law claim. However, failure to train may also comprise an action under § 1983. Accordingly, the Court will address the failure to train claim from the standpoint of a § 1983 action premised on Benton County Jail personnel providing inadequate response to Plaintiff's medical needs.

plaintiff]." *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010). The record, viewed in a light most favorable to Plaintiff, does not reveal anything to suggest that Benton County or Defendant Holloway had notice that Benton County Jail medical procedures were deficient.

### D. Arkansas State Law Claims

Plaintiff's complaint also lists several Arkansas state law claims, including a negligence action against Defendant Holloway and an Arkansas Civil Rights Act violation brought against all of the Defendants. Because all federal claims are being dismissed prior to trial, this Court will decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *Keating v. Neb. Pub. Power Dist.*, 660 F.3d 1014, 1018–19 (8th Cir. 2011) (explaining that in the usual case where federal claims are dismissed before trial, a court should decline jurisdiction over remaining state-law claims). *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Doc. 34) is GRANTED. Plaintiff's 42 U.S.C. § 1983 claims are DISMISSED WITH PREJUDICE. Plaintiff's state-law claims are DISMISSED WITHOUT PREJUDICE. Judgment will be entered separately.

IT IS SO ORDERED this 16th day of September, 2020.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE